## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

```
——————————————————————— x
                                    :
AUDREY McDONALD, on behalf of herself   :
and others similarly situated,          :
                                    :
              Plaintiff,            :
                                    :
       v.                           :
                                    :
BOARD OF TRUSTEES OF THE CITY OF    :
MIAMI GENERAL EMPLOYEES' &          :
SANITATION EMPLOYEES' RETIREMENT:
TRUST, USI INSURANCE SERVICES, LLC, :
and UNITED OF OMAHA LIFE            :
INSURANCE COMPANY,                  :
                                    :
              Defendants.           :
——————————————————————— x
```

**Civil Action No.:**

**<u>COMPLAINT - - CLASS ACTION</u>**

**JURY TRIAL DEMANDED**

### Introduction

1.      Audrey McDonald ("Plaintiff") brings this class action pursuant to the Employee Retirement Income Security Act ("ERISA") and governing insurance policies for the benefit of policyholders like herself who have been systematically overcharged for life insurance premiums.

2.      Plaintiff's life insurance policy includes automatic benefits reductions once per year, for five years, after she turns 61 years of age, and her monthly premiums are to reduce in kind at the same time the benefits reduce.

3.      However, while Plaintiff's benefits automatically reduced on schedule beginning in October 2015, her monthly premiums *did not*—resulting in Plaintiff overpaying for reduced insurance coverage for more than a year and a half.

4.     And to make matters worse, once Plaintiff discovered the error and raised concerns, she was denied any refund of the excess premiums that had been collected for so many months.

**Nature of Action**

5.     Plaintiff's group life insurance policy at issue was negotiated by, and offered to members of, the City of Miami's ("City") local chapter of the American Federation of State, County, and Municipal Employees ("AFSCME City of Miami").

6.     As municipal employees for the City, many members of AFSCME City of Miami also are beneficiaries of the City of Miami General Employees' & Sanitation Employees' Retirement Trust ("GESE Trust")—the retirement plan put in place specifically for the benefit of City employees.

7.     The GESE Trust is administered by a nine-member board of trustees (the "GESE Board"), of which four members are chosen by AFSCME City of Miami.

8.     The GESE Trust partnered with USI Insurance Services, LLC ("USI") to offer its members the policies here at issue through United of Omaha Life Insurance Company ("United of Omaha").

9.     In other words, United of Omaha is the insurer, those GESE Trust beneficiaries who elected to enroll in the relevant life insurance policies are the insureds, and, upon information and good faith belief, USI was at all relevant times one of the administrators for the insurance policies.

10.    United of Omaha, USI, and the GESE Board, in its capacity as administrator of the GESE Trust, are collectively referred to as "Defendants."

11.     The life insurance policies at issue provide for death benefits of varying amounts that automatically decrease by 10% annually, starting when the insureds turn 61 and continuing until they reach age 65.

12.     From the age of 65 onward, the insureds remain covered under their policies but for an amount that equals only 50% of their initial death benefits.

13.     As a result of these automatic reductions in benefits, the insureds are to pay correspondingly reduced monthly premiums beginning at age 61 so that their policies become less expensive over time as their benefits diminish.

14.     The applicable schedule for reductions in benefits and premiums is clearly defined in each group life insurance policy, benefits summary, and enrollment form.

15.     Nevertheless, while Plaintiff's life insurance benefits automatically diminished once she turned 61, the monthly premiums she paid were not reduced in kind.

16.     As a result, for well over a year, Plaintiff systematically overpaid for certain life insurance coverage she had purchased through the GESE Trust.

17.     Defendants breached their fiduciary duties to Plaintiff not only in collecting inflated insurance premiums beyond what she owed, but also in denying her a refund of the overages they had collected once Plaintiff discovered Defendants' errors.

18.     Upon information and good faith belief, other GESE Trust beneficiaries have similarly overpaid for insurance coverage like Plaintiff did—and likely continue to do so.

19.     Plaintiff now seeks equitable relief under ERISA, for herself and for all other similarly situated GESE Trust beneficiaries, in the form of (i) reimbursement of all losses resulting from Defendants' breaches—in other words, reimbursement of all excess premiums collected beyond what was owed under the applicable life insurance policies, plus interest

thereon; and (ii) an injunction to prevent the continued collection of inflated life insurance premiums to which Defendants are not entitled.

20.     What's more, for herself and for all other similarly situated GESE Trust beneficiaries, Plaintiff seeks relief from United of Omaha for its breaches of the life insurance policies it underwrote for them.

## Parties

21.     Plaintiff is a natural person who at all relevant times resided in Mobile County, Alabama.

22.     For approximately 19 years, until 2006, Plaintiff was employed by the City as a clerk for the City's police department.

23.     Plaintiff is a beneficiary of the GESE Trust who, at all relevant times, owned two life insurance policies underwritten by United of Omaha and offered to GESE Trust beneficiaries like herself.

24.     The GESE Trust maintains principal offices in Coconut Grove, Florida.

25.     The GESE Trust is a single-employer defined benefit plan that is administered by the GESE Board and covers most of the City's general and sanitation employees, except for: those who are precluded from participation pursuant to City Code; those who have their own separate pension trusts (*e.g.*, police officers and fire-fighters); and those who are eligible to, and do, decline membership.

26.     GESE Trust beneficiaries contribute a portion of their compensation to the trust while employed with the City; then, upon retirement, the beneficiaries receive retirement benefits from the trust in an amount determined according to their years of service to the City and their compensation during that time.

27.     As of October 2015, the GESE Trust's membership exceeded 3,700 current and former City employees.

28.     As of September 2016, the GESE Trust held more than $600 million in trust for its beneficiaries.

29.     The GESE Trust is an "employee pension benefit plan" within the meaning of ERISA, 29 U.S.C. § 1002(2)(A).

30.     The GESE Trust, in partnership with USI and United of Omaha, secured the group life insurance policies at issue here in which its beneficiaries could enroll for coverage.

31.     At all relevant times, the GESE Trust assisted in administering the group life insurance policies at issue, which included receiving, processing, and forwarding beneficiaries' premium payments by way of deductions from those beneficiaries' periodic benefits payouts.

32.     At all relevant times, the GESE Board was a fiduciary within the scope of ERISA, 29 U.S.C. § 1002(21), with respect to its administration of the GESE Trust and resulting oversight of the trust's disbursement of retirement benefits and concomitant collection of insurance premiums at issue here.

33.     USI is an insurance broker and consultant with principal offices in Valhalla, New York and local offices in Coral Gables, Florida.

34.     Upon information and good faith belief, USI assisted in administering the group life insurance policies at issue here.

35.     Upon information and good faith belief, at all relevant times, USI assisted in receiving and processing the premium payments for the life insurance policies at issue.

36.     Upon information and good faith belief, at all relevant times, USI acted as one of the administrators of the life insurance policies at issue.

37.     As such, at all relevant times, USI was a fiduciary within the scope of ERISA, 29 U.S.C. § 1002(21), with respect to the retirement benefits and insurance premiums at issue.

38.     United of Omaha is an insurance underwriter with principal offices in Omaha, Nebraska.

39.     United of Omaha underwrote the life insurance policies at issue here.

40.     At all relevant times, United of Omaha was the payor for any insurance benefits to be paid under the life insurance policies at issue.

41.     At all relevant times, United of Omaha received premium payments for the life insurance policies at issue.

42.     At all relevant times, United of Omaha acted as one of the administrators of the life insurance policies at issue.

43.     As such, at all relevant times, United of Omaha was a fiduciary within the scope of ERISA, 29 U.S.C. § 1002(21), with respect to the retirement benefits and insurance premiums at issue here.

44.     And even if USI and United of Omaha were not fiduciaries to Plaintiff and the class within the scope of ERISA during the relevant time period—they were—liability nevertheless attaches because "a non-fiduciary may be held liable for knowing participation in another's breach of fiduciary duty." *Laird v. Aetna Life Ins. Co.*, 263 F. Supp. 3d 1231, 1246 (M.D. Ala. 2017) (citing *Harris Trust & Savs. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 244–45 (2000)).

## Jurisdiction and Venue

45.     This Court has jurisdiction pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

46.     Venue is proper before this Court pursuant to 29 U.S.C. § 1132(e)(2), as the plan is administered in this district, as the breach took place in this district, and as Defendants conduct business and may be found in this district.

**Factual Allegations**

47.     As a retiree of the City's police department, Plaintiff currently receives retirement benefits through the GESE Trust.

48.     Plaintiff obtained a pair of life insurance policies offered through the GESE Trust and USI and underwritten by United of Omaha.

49.     The first such policy—the "Basic Life" policy—carried an initial death benefit of $35,000.

50.     A copy of the Summary of Coverage for the Basic Life policy is attached as Exhibit A.

51.     The second such policy—the "Voluntary Life" policy—carried an initial death benefit of $100,000.

52.     A copy of the Summary of Coverage of the Voluntary Life policy is attached as Exhibit B.

53.     A copy of Plaintiff's executed Enrollment Form confirming her Basic Life policy coverage of $35,000 and Voluntary Life policy coverage of $100,000 is attached as Exhibit C.

54.     During the relevant time period, Plaintiff paid her monthly premiums by way of automated deductions from her monthly retirement benefits paid by the GESE Trust.

55.     That is, the GESE Trust withheld from Plaintiff's monthly benefits disbursements an amount equal to Plaintiff's combined premium payments and then, upon information and

good faith belief, forwarded each withholding to USI and/or United of Omaha for payment on the life insurance policies.

56.     Significant here, both of Plaintiff's life insurance policies include automatic annual benefits reductions of 10%, beginning at age 61 and continuing through age 65, such that each policy's respective death benefit will be cut in half by the time Plaintiff turns 65. *See* Ex. A at 3; Ex. B at 4.

57.     In other words, after Plaintiff turned 61 years of age in September 2015, each of her policy's death benefits automatically reduced to 90% of its initial value on the first day of the following month (*i.e.*, October 1, 2015), and then each reduced again to 80% of its initial value on October 1, 2016 after she turned 62 in September 2016.[1]

58.     Upon reaching the age of 63, Plaintiff's benefits will reduce again to 70% of their initial values, then to 60% at age 64, and finally to 50% at age 65.

59.     Thereafter, the benefits remain at 50% of their initial value through the remainder of the policies.

60.     So, once Plaintiff turns 65, her Basic Life policy benefit will be $17,500 and her Voluntary Life policy benefit will be $50,000.

61.     Importantly, the monthly premiums owed for the policies *also* are to reduce, by 10% annually from ages 61 through 65, in lockstep with the automatic annual benefits reductions.

---

[1]     The insurance policies' benefits and premiums automatically reduced on the first day of the month following Plaintiff's applicable birthday. *See* Ex. A at 12; Ex. B at 10. Upon information and belief, the same is true for all proposed class members.

62.     This is reflected in Plaintiff's Enrollment Form, which itemizes into six categories the monthly premium costs for Plaintiff's Basic Life policy in particular: "Age 60 & Under"; "Age 61"; "Age 62"; "Age 63"; "Age 64"; and "Age 65 & Over." *See* Ex. C at 1.

63.     For that Basic Life policy, Plaintiff initially paid $15.75 per month, and for her Voluntary Life policy she paid $97 per month—for respective death benefits of $35,000 and $100,000.

64.     At the age of 61, once the respective benefits automatically reduced to $31,500 and $90,000, the insurance premiums were to decrease by 10% as well, to approximately $14.18 and $87.30, respectively.

65.     At the age of 62, these premiums were to decrease again by 10%, to approximately $12.60 and $77.60, respectively.

66.     For her Basic Life policy, the premium payments withdrawn from Plaintiff's retirement benefits and then forwarded to USI and/or United of Omaha automatically reduced according to the policy's schedule.

67.     However, for her Voluntary Life policy, upon turning 61 and then 62, Plaintiff continued to pay the initial premium amount—$97 per month—even though her benefit automatically reduced per the insurance policy.

68.     This means that for the 12 months that Plaintiff was 61 years of age—October 2015 through September 2016—she overpaid for the Voluntary Life policy by approximately $9.70 each month, for a total overpayment of approximately $116.40 that year.

69.     What's more, Plaintiff continued to overpay for her Voluntary Life policy upon turning 62, then by approximately $19.40 each month, for seven more months—from October 2016 until April 2017, which is when she discovered the error.

70.     During those seven months, Plaintiff overpaid by an additional $135.80 in total.

71.     Thus, from the time she turned 61 until discovering the error at age 62, Plaintiff overpaid for her Voluntary Life insurance coverage by a total of $252.20 over the course of 19 months.

72.     Though Plaintiff paid these inflated premiums for well over a year, her $100,000 Voluntary Life benefit nevertheless reduced, automatically, by 10% each year, per the terms of the policy.

73.     Plaintiff thus overpaid for 19 consecutive months for nothing in return.

74.     The automated nature of Plaintiff's premium payments by way of deduction from her monthly retirement benefits contributed to the obfuscation of these overpayments for so many months.

75.     This is particularly true considering that the monthly premium withholdings for the policies represented but a fraction of the total pension benefits disbursed to Plaintiff each month, meaning minor variations of $10 or so easily could go unnoticed.

76.     What's more, upon turning 61 and then 62, Plaintiff never received any notices of the automatic benefits reductions for both policies.

77.     Had she been notified when the *benefits* reductions were instituted each time, Plaintiff might have reviewed her premium *withholdings* to confirm that they, too, had been reduced in kind.

78.     Worth noting, for Plaintiff's Basic Life policy, Defendants did, in fact, automatically reduce Plaintiff's withholdings each year to account for the lower premium payments based on age.

79.     Upon information and good faith belief, Defendants therefore have a process in place, or at a minimum a review process, to verify correct withholding amounts for certain of the life insurance policies offered to GESE Trust beneficiaries.

80.     Yet, for Plaintiff's Voluntary Life policy, there was no such protection; Defendants inexplicably left the burden on Plaintiff to not only remember, but also request, the necessary adjustments to her automated withholdings—for a policy she had purchased long before.

81.     Worse, when Plaintiff alerted Defendants to the overpayments, they refused to refund her the overages she had paid.

82.     That is, Plaintiff first raised her concerns to the GESE Trust's administrative office several months ago, but the trust's administration simply directed her to USI and United of Omaha for assistance.

83.     Then, after taking her complaints to USI and United of Omaha concerning the overpayments, they, too, refused any reimbursement, resulting in her having to obtain counsel.

84.     Upon information and good faith belief, other employees and retirees aged 61 and older similarly overpaid—and likely continue to overpay—for the same reasons Plaintiff unwittingly overpaid.

85.     Through this action, Plaintiff seeks for herself, and for all other similarly situated GESE Trust beneficiaries, reimbursement of all premium overages paid after reaching 61 years of age.

### Class Action Allegations

86.     Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3) on behalf of the following two classes:

### ERISA Class

All beneficiaries of the City of Miami General Employees' & Sanitation Employees' Retirement Trust from whom the retirement trust, USI Insurance Services, LLC, and/or United of Omaha Life Insurance Company collected a life insurance premium in excess of that owed under the applicable insurance policy within six years of the filing of this complaint, through the date of class certification.

### Contract Class

All beneficiaries of the City of Miami General Employees' & Sanitation Employees' Retirement Trust who currently own, or have owned, a life insurance policy underwritten by United of Omaha Life Insurance Company that provides for a mandatory reduction in policy benefits and premiums owed based on the insured's age, and from whom United of Omaha Life Insurance Company collected a life insurance premium in excess of that owed under the insurance policy within five years of the filing of this complaint, through the date of class certification.

87. Excluded from the classes are Defendants, their officers and directors, and any entity in which any defendant has or had controlling interests.

88. The proposed classes satisfy Rule 23(a)(1) because, upon information and belief, they are so numerous that joinder of all members is impracticable.

89. The exact number of class members is unknown to Plaintiff at this time and can only be determined through appropriate discovery.

90. The proposed classes are ascertainable because they are defined by reference to objective criteria.

91. In addition, and upon information and belief, the names and addresses of all members of the proposed classes can be identified in business records maintained by Defendants.

92. The proposed classes satisfy Rules 23(a)(2) and 23(a)(3) because Plaintiff's claims are typical of the claims of the members of the classes.

93.     To be sure, the claims of Plaintiff and all members of the classes originate from the same conduct, practice, and procedure on the part of Defendants, and Plaintiff possesses the same interests and has suffered the same injuries as each member of the proposed classes.

94.     Plaintiff satisfies Rule 23(a)(4) because she will fairly and adequately protect the interests of the members of the classes and has retained counsel experienced and competent in class action litigation.

95.     Plaintiff has no interests that are irrevocably contrary to or in conflict with the members of the classes that she seeks to represent.

96.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy, since joinder of all members is impracticable.

97.     Furthermore, as the damages suffered by individual members of the classes may be relatively small, the expense and burden of individual litigation make it impracticable for the members of the classes to individually redress the wrongs done to them.

98.     There will be no extraordinary difficulty in the management of this action as a class action.

99.     Issues of law and fact common to the members of the classes predominate over any questions that may affect only individual members, in that Defendants have acted on grounds generally applicable to the classes.

100.     Among the issues of law and fact common to the class are:

a.   Defendants' violations of ERISA as alleged herein;

b.   Whether Defendants are fiduciaries within the scope of ERISA;

c.   Whether Defendants systematically overcharged beneficiaries for life insurance premiums; and

     d.  the availability of attorneys' fees and costs.

<b>Count I: Violation of ERISA, 29 U.S.C. § 1104(a)(1)<br>Against All Defendants</b>

101.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 100.

102.    ERISA at 29 U.S.C. § 1104 demands the following standard of care from fiduciaries:

(a) Prudent man standard of care

> (1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—
>
>> (A) for the exclusive purpose of:
>>
>>> (i)  providing benefits to participants and their beneficiaries; and
>>>
>>> (ii) defraying reasonable expenses of administering the plan;
>>
>> (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims

29 U.S.C. § 1104(a)(1).

103.    ERISA elsewhere defines a "fiduciary" as follows:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

29 U.S.C. § 1002(21)(A).

104.    Given their management and control over Plaintiff's retirement benefits and insurance premiums—in that Defendants collected the premiums from Plaintiff by way of automated deductions from her retirement benefits, then refused to refund the premiums once alerted to the overpayment—Defendants are fiduciaries subject to the duties of loyalty and prudence required by ERISA.

105.    Upon information and good faith belief, Defendants similarly (mis)managed the premiums paid by absent ERISA Class members.

106.    Here, Defendants failed to act loyally and prudently toward Plaintiff and the ERISA Class because they collected more in insurance premiums than they were entitled to collect and subsequently refused to refund the overages collected.

107.    In Plaintiff's case, she overpaid by approximately $9.70 per month for 12 months while she was 61 years of age, and later by approximately $19.40 per month for seven months while she was 62 years of age.

108.    Plaintiff's total overpayment of approximately $252.20 still has not been refunded to her.

109.    By collecting Plaintiff's and the ERISA Class members' inflated premiums and then refusing refunds, Defendants failed to discharge their duties solely in the interest of Plaintiff and the class members for the exclusive purpose of providing them benefits to which they were entitled.

110.    Likewise, Defendants failed to discharge their duties to Plaintiff and the ERISA Class members with the adequate care, skill, prudence, and diligence that a prudent man acting in a similar capacity would use.

111.    And even if USI and United of Omaha were not fiduciaries to Plaintiff and the class within the scope of ERISA during the relevant time period—they were—liability nevertheless attaches because "[u]nder § 1132(a)(3), a non-fiduciary may be held liable for knowing participation in another's breach of fiduciary duty." *Laird*, 263 F. Supp. 3d at 1246 (citing *Harris Trust & Savs. Bank*, 530 U.S. at 244–45).

112.    The GESE Trust's automated withholding of insurance premiums from Plaintiff's retirement benefits, subsequent transfers of those funds to USI and/or United of Omaha, and the acceptance by USI and/or United of Omaha of knowingly inflated premiums breached Defendants' (or, at a minimum, the GESE Board's) duties of loyalty and prudence with respect to Plaintiff's benefits.

113.    Upon information and good faith belief, the group life insurance policies that Plaintiff purchased through the City were standardized policies offered to many, if not all, GESE Trust beneficiaries.

114.    Indeed, the policies each indicate a unique "Group Policy Number" for the benefit of "AFSCME City of Miami." *See* Ex. A at 3, 28; Ex. B at 3, 40.

115.    AFSCME City of Miami is the local union representation for the City employees who are also beneficiaries of the GESE Trust.

116.    That the insurance policies' benefits and premiums automatically diminished and reduced from ages 61 to 65 thus was well known to Defendants, such that a fiduciary like the GESE Board, on behalf of the GESE Trust, should have had policies and procedures in place to adequately protect trust beneficiaries by making necessary adjustments to their automated insurance withholdings depending upon their age.

117.    For that matter, co-fiduciaries like USI and United of Omaha should have had their own policies and procedures in place to adequately safeguard GESE Trust beneficiaries from potential overpayment based upon the known benefits and premium schedules clearly delineated in the group insurance policies they sold to those beneficiaries.

118.    In other words, even if the GESE Board was derelict in its own duties by allowing the trust to withhold more than what was actually owed, USI and United of Omaha nevertheless should have recognized the inflated withholdings and either rejected them outright or immediately returned any overages for distribution to the aggrieved insureds.

119.    Any fiduciary in Defendants' positions acting with appropriate loyalty and prudence would have maintained such policies and procedures to protect against the very harm ultimately worked on Plaintiff and the ERISA Class.

120.    At bottom, no reasonably prudent fiduciary would have allowed Plaintiff to be overcharged at all, let alone for well over a year, for insurance coverage she was never provided.

121.    Worse, Defendants' failures here are doubly obvious in light of their individual and collective refusal to refund Plaintiff's overpayments even after she brought the problem to their attention.

122.    Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff may, by way of this action, obtain appropriate equitable relief to redress Defendants' violations of § 1104.

123.    To that end, Plaintiff seeks reimbursement for herself and for the putative ERISA Class of all losses resulting from Defendants' breaches—that is, all insurance premium overages collected by Defendants during the relevant time period, plus appropriate interest thereon.

124. Plaintiff also seeks to enjoin Defendants from further violations of § 1104 in the form of collecting insurance premiums beyond what are actually owed under the applicable life insurance policies.

## Count II: Violation of ERISA, 29 U.S.C. § 1106
### Against All Defendants

125. Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 100.

126. ERISA prohibits the following self-interested dealings by fiduciaries:

(b) Transactions between plan and fiduciary. A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,

(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or

(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b).

127. As described above, Defendants each qualify as a fiduciary under ERISA given their management and control over Plaintiff's retirement benefits and insurance premiums—specifically, the GESE Board oversaw the trust's collection of the (inflated) premiums from Plaintiff by way of automated deductions from her retirement benefits, which where then remitted to USI and/or United of Omaha for (over)payment on Plaintiff's insurance policies.

128. Upon information and good faith belief, Defendants collected and (mis)managed the premiums paid by absent ERISA Class members in the same way.

129. For well over a year, Defendants collected more from Plaintiff each month than she actually owed, resulting in a total overpayment of approximately $252.20 for Plaintiff's Voluntary Life policy coverage.

130. Defendants then refused to refund her the $252.20 in overages they had collected.

131. In collecting and holding Plaintiff's money for one or all of their own accounts, *even after she requested a refund*, Defendants engaged in self-dealing in violation of the law.

132. And even if USI and United of Omaha were not fiduciaries to Plaintiff and the class within the scope of ERISA during the relevant time period—they were—liability nevertheless attaches because "[u]nder § 1132(a)(3), a non-fiduciary may be held liable for knowing participation in another's breach of fiduciary duty." *Laird*, 263 F. Supp. 3d at 1246 (citing *Harris Trust & Savs. Bank*, 530 U.S. at 244–45).

133. Each defendant knowingly participated in the misconduct outlined herein in light of their individual and collective refusal to refund Plaintiff's overpayments even after she brought the problem to their attention.

134. Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff seeks equitable relief to redress Defendants' violations of § 1106 in the form of reimbursement for herself and for the putative ERISA Class of all losses resulting from Defendants' breaches—that is, all insurance premium overages collected by Defendants during the relevant time period, plus appropriate interest thereon.

135. Plaintiff also seeks to enjoin Defendants from further violations of § 1106 in the form of collecting insurance premiums beyond what is actually owed under the applicable policies and holding such overages for themselves.

## Count III: Breach of Contract
## Against United of Omaha

136.    Plaintiff repeats and re-alleges each and every factual allegation contained in paragraphs 1 through 100.

137.    In or about October 2014, Plaintiff entered into a contract with United of Omaha for life insurance coverage. Exs. B, C.

138.    Plaintiff's Voluntary Life policy carried an initial death benefit of $100,000, at a monthly cost of $97. Exs. B, C.

139.    Beginning in October 2015, after she turned 61 years of age, per the terms of the policy, Plaintiff's Voluntary Life death benefit automatically reduced to 90% of its initial value (*i.e.*, $90,000), and then reduced again to 80% of its initial value (*i.e.*, $80,000) in October 2016 after she turned 62.

140.    Per the policy itself and accompanying Enrollment Form, Plaintiff's monthly premium payments for the Voluntary Life policy also were to reduce by 10% of their initial value at the same time the benefit diminished each year between the ages of 61 and 65. Exs. B, C.

141.    That is, beginning in October 2015 and continuing through September 2016, Plaintiff should have paid only $87.30 per month.

142.    Then, beginning in October 2016 and continuing through September 2017, Plaintiff should have paid only $77.60 per month.

143.    Instead, from October 2015 through April 2017, Plaintiff continued to pay United of Omaha $97 each month by way of automatic deductions from her GESE Trust retirement benefits payouts—for a total overpayment of $252.20 over the course of 19 months.

144.    When Plaintiff alerted United of Omaha and its co-defendants to this error, they refused to refund the excess premiums they had collected.

145.    United of Omaha thus breached Plaintiff's Voluntary Life policy by collecting, and refusing to refund, premium payments in excess of those owed under the policy.

146.    In the same way, United of Omaha breached all Contract Class members' life insurance policies by collecting, and not refunding, excess premium payments.

147.    Plaintiff seeks reimbursement for herself and for the putative Contract Class of all insurance premium overages collected by United of Omaha during the relevant time period, plus appropriate interest thereon

**WHEREFORE**, Plaintiff respectfully requests relief and judgment as follows:

a.  Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

b.  Adjudging and declaring that Defendants violated 29 U.S.C. §§ 1104 and 1106;

c.  Awarding Plaintiff and members of the ERISA Class equitable relief pursuant to 29 U.S.C. § 1132(a)(3) in the form of reimbursement of all insurance premiums paid beyond what was owed under applicable policies, plus interest thereon;

d.  Enjoining Defendants from future violations of 29 U.S.C. §§ 1104 and 1106;

e.  Awarding Plaintiff and members of the class their reasonable costs and attorneys' fees incurred in this action, including expert fees, pursuant to 29 U.S.C. § 1132(g) and Rule 23 of the Federal Rules of Civil Procedure;

f.  Adjudging and declaring that United of Omaha breached the terms of Plaintiff's and the Contract Class's life insurance policies in that United of Omaha collected insurance premiums beyond what was owed under the applicable policies;

g.  Awarding Plaintiff and members of the class any pre-judgment and post-judgment interest as may be allowed under the law; and

h.  Awarding other and further relief as the Court may deem just and proper.

## TRIAL BY JURY

Plaintiff is entitled to and hereby demands a trial by jury.

Dated: July 16, 2018

/s/ Jesse S. Johnson
Michael L. Greenwald
James L. Davidson
Jesse S. Johnson
Alexander D. Kruzyk
5550 Glades Road, Suite 500
Boca Raton, Florida 33431
Tel: (561) 826-5477
Fax: (561) 961-5684
mgreenwald@gdrlawfirm.com
jdavidson@gdrlawfirm.com
jjohnson@gdrlawfirm.com
akruzyk@gdrlawfirm.com

Aaron D. Radbil
Greenwald Davidson Radbil PLLC
106 East Sixth Street, Suite 913
Austin, Texas 78701
Tel: (512) 322-3912
Fax: (561) 961-5684
aradbil@gdrlawfirm.com

*Counsel for Plaintiff and the proposed classes*